NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 20 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ELIA RAMIREZ, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

TRUSPER INC., doing business as Musely,

Defendant - Appellant.

No. 24-6434

D.C. No.
5:24-cv-02012-EJD

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted October 7, 2025
San Francisco, California

Before: NGUYEN and BRESS, Circuit Judges, and BENNETT, District Judge.**

Trusper Inc. (doing business as "Musely") appeals the district court's order denying its motion to compel arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(1). Reviewing the district court's decision de novo "and any underlying

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

factual findings for clear error," *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 830 (9th Cir. 2022), we affirm.

Musely, "as the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." *Id.* at 832 (quoting *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019)).  We "apply state-law principles of contract formation." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)).  California courts determine mutual assent "under an objective standard applied to the outward manifestations or expressions of the parties." *Herzog v. Superior Ct.*, 321 Cal. Rptr. 3d 93, 105 (Ct. App. 2024) (quoting *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 12 (Ct. App. 2021)), *review denied* (Aug. 28, 2024).

"[I]n the absence of actual notice, a manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons—but any such action must indicate the parties' assent to the *same thing*, which occurs only when the website puts the consumer on constructive notice of the contractual terms." *Id.* (quoting *Sellers*, 289 Cal. Rptr. 3d at 13).  The website must provide "reasonably conspicuous notice of the terms to which the consumer will be bound." *Berman*, 30 F.4th at 856.  In determining whether a consumer was "put . . . on inquiry notice of contractual terms contained

on a separate, hyperlinked page," the transaction's "full context . . . is critical." *Herzog*, 321 Cal. Rptr. 3d at 105 (quoting *Sellers*, 289 Cal. Rptr. 3d at 5).

1.  At step one of the online enrollment process, even if the hyperlink provided reasonably conspicuous notice of the "Telehealth Consent" terms, the link merely opened the "Consent to Telehealth Services" pop-up window, which did not contain the Participant Agreement. Although the pop-up window contained a "terms page" hyperlink, the hyperlinked text was indistinguishable from the surrounding text except for underlining. It appeared in the last of three paragraphs containing no action buttons, and it was uncapitalized. Moreover, the option to "click on the link provided below"—a link which did not exist—created additional confusion and bore an uncertain relationship to the preceding option to "visit the terms page."

While the pop-up text also stated that "[b]y consenting to Telehealth you are agreeing to our full terms and conditions," that referred to "Musely's full *Telehealth* Terms and Conditions" (emphasis added). A reasonable user would expect these terms and conditions to involve the same subject matter—i.e., consent to "the delivery of health care services using electronic communications, information technology, or other means between a health care provider and a patient who are not in the same physical location"—and not "all of the terms in the

hyperlinked webpage, including the requirement of binding arbitration in the event of a legal dispute," *Herzog*, 321 Cal. Rptr. 3d at 114.

Musely is correct that notice of an arbitration provision is not inconspicuous merely because the website user must click through multiple screens to reach it; but assent to one hyperlinked agreement is not assent to a second agreement linked therein unless the first agreement "clearly and unequivocally refers to the [second agreement] by name and calls it to the parties' attention." *B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 66 (Ct. App. 2022) (citing *Shaw v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 2d 850, 856 (Ct. App. 1997)). Here, notice of the "Telehealth Consent" agreement did not clearly refer to the terms of the "Participant Agreement." *See id.* at 66 n.10 (distinguishing analogous circumstances).

2. At step two of the online enrollment process, the district court did not err in finding that Musely's evidence was insufficient to show that the visual placement of the final link to the Participant Agreement provided the requisite notice. According to Musely's declarant, clicking on the "Terms of Use" hyperlink opens "a table of contents where . . . the customer can click on the Participant Agreement," but Musely did not provide a screenshot of the table of contents page. Depending on its layout, a reasonable website user might not assume that the "Participant Agreement" in a table of contents was part of the "Terms of Use" to which she was agreeing.

Even if the district court had considered Ramirez's screenshot of the Terms Page as it existed several months after she visited the website, that only highlights the webpage's confusing nature. The default screen on the Terms Page was a "Copyright Policy" that did not contain an arbitration agreement or mention the Participant Agreement. And because clicking on the step two action button expressed agreement only to the "Privacy Policy" and "Terms of Use," a reasonable user could have assumed that the "Terms of Use" agreement was found by clicking on "Musely Subscription Terms" rather than on "Participant Agreement."

3. Musely argues that the district court improperly disregarded the transaction's context by giving "short shrift" to Ramirez's four visits to the website over the course of a year and her actions during those visits. But the district court acknowledged that the context of the transaction "contemplates an ongoing relationship," which "a reasonable user would expect . . . to be bound by terms and conditions." Moreover, Musely does not maintain that Ramirez had actual notice of the Participant Agreement, so it is unclear how her asserted "sustained, repeated, and prolific pattern of use and engagement" with the website is relevant to the objective standard for constructive notice. *See Cruz v. Tapestry, Inc.*, 335 Cal. Rptr. 3d 906, 917 (Ct. App. 2025). Regardless, the ongoing nature of Ramirez's

relationship with Musely does not overcome the other deficiencies in notice discussed above.

**AFFIRMED.**